AO 91 (Rev. 11/11) Criminal Complaint    AUSA Ashley A. Chung (312) 697-4089

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



FILED
JUN 10 2021

UNITED STATES OF AMERICA

v.

DEAN VALERA

CASE NUMBER: 21 CR MAGISTRATE JUDGE
GABRIEL A. FUENTES

21 CR 370

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about June 9, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a) | possession with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

_____
Thomas J. Robertson
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 10, 2021                    _____
                                        Judge's signature

City and state: Chicago, Illinois        GABRIEL A. FUENTES, U.S. Magistrate Judge
                                          Printed name and title

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, Thomas J. Robertson, being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since approximately July 2018. My current responsibilities include the investigation of narcotics trafficking offenses.

2. This affidavit is submitted in support of a criminal complaint alleging that DEAN VALERA has violated Title 21, United States Code, Section 841(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging VALERA with possession with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, information provided by a confidential source, physical surveillance, law enforcement review of surveillance video, my training and experience, and the training and experience of other law enforcement agents.

## I. FACTS SUPPORTING PROBABLE CAUSE

4. In summary, and as described further below, based on law enforcement surveillance and other law enforcement investigation, there is probable cause to believe that, on or about June 9, 2021, DEAN VALERA possessed with intent to distribute a controlled substance, namely 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine.

### A. **Identification of VALERA**

5. According to a confidential source ("CS-1"),[1] on a specific date in spring 2021, around the corner from a hotel in downtown Chicago ("Hotel A"), CS-1 met with a bald, heavyset Hispanic male with a neck beard, who was accompanied by another Hispanic male, and picked up from the two Hispanic males approximately $800,000 in cash. Also according to CS-1, the two Hispanic males were driving a white van with no windows.

6. Law enforcement subsequently reviewed Hotel A's security footage from this specific date in April 2021, and identified a white van with no windows (the "Subject Vehicle") that passed in front of Hotel A shortly before CS-1 was recorded exiting the hotel empty-handed, and then returning approximately a few minutes later with two bags.

---

[1] CS-1 has no prior criminal convictions. CS-1 been cooperating with law enforcement since approximately April 2021, after CS-1 was arrested with approximately over $1 million in suspected drug proceeds in CS-1's car. CS-1 has not been charged in connection with that arrest, but is aware that he/she may be charged in the future. Upon his/her arrest, CS-1 agreed to cooperate with law enforcement in the hope of receiving consideration with regard to any future charges that may be filed. CS-1 has provided reliable information that law enforcement was able to corroborate through investigation, including review of surveillance footage.

7. Based on review of footage from multiple Police Observation Device (POD) cameras, law enforcement was able to track the movement of a white van with no windows (appearing consistent with the Subject Vehicle from Hotel A's security footage) back to Interstate 94 West. Based on license plate reader data, law enforcement was able to determine the plate number for the white van, which, according to Illinois Secretary of State records, was registered to an air duct cleaning business ("Business A") and an individual who, based on an open-source Internet search, appears to be the owner of Business A.

8. Based on toll analysis for a phone number associated with Business A, law enforcement identified a phone number in frequent contact with Business A that, according to a search of a law enforcement database, was associated with DEAN VALERA. Law enforcement reviewed VALERA's photograph in Illinois Secretary of State records and observed that VALERA was a bald, heavyset Hispanic male with a neck beard, appearing consistent with CS-1's description of one of the two Hispanic males from whom he picked up cash drug proceeds. Law enforcement also reviewed the public website for Business A and observed a photograph of a bald, heavyset Hispanic male with a goatee, who, based on comparison with VALERA's driver's license photo, law enforcement identified as VALERA.[2]

---

[2] As of now, law enforcement has not shown a photograph of VALERA to CS-1 for, *e.g.*, identification purposes.

B. <u>June 9, 2021 Surveillance</u>

9. Based on its review of public social media accounts for Business A, law enforcement learned that Business A operated from a location on S. Harlem Avenue in Stickney, Illinois. On the morning of June 9, 2021, law enforcement initiated physical surveillance on Business A's Stickney location.

10. At approximately 10:45 a.m., surveillance observed a maroon Chrysler Pacifica minivan depart from Business A's parking lot. According to Illinois Secretary of State records, the maroon minivan's license plate was registered to Business A. Law enforcement initiated mobile surveillance on the maroon minivan, and observed a female driver and VALERA seated in the front passenger seat.[3] While continuing mobile surveillance on the maroon minivan, law enforcement also observed a male child, appearing to be approximately 7 to 10 years old, seated in the second row of seats inside the minivan.

11. At approximately 12:40 p.m., surveillance observed the maroon minivan return to Business A's location in Stickney, Illinois, and saw the female driver, VALERA, and the child exit the vehicle and enter Business A. At approximately 1:39 p.m., surveillance observed the female driver and child exit the business and return to the maroon minivan. Surveillance also subsequently confirmed that VALERA had returned to the minivan and was again seated in the front passenger seat as it

---

[3] The identification of VALERA in this Affidavit is based on law enforcement's comparison of VALERA to his Illinois driver's license photo.

departed from Business A and headed southbound on S. Harlem Avenue to Interstate 55 North toward Chicago.

12. At approximately 2:07 p.m., surveillance observed the maroon minivan arrive and park at the rear of a storage facility on West 47th Street in Chicago, Illinois ("Storage Facility A"). Surveillance observed the child exit the minivan and head toward a gated area behind Storage Facility A, but then momentarily lost visibility of the minivan and child. Approximately one minute later, surveillance observed the maroon minivan parked inside the gated area behind Storage Facility A, with only the female driver inside the car.

13. At approximately 2:12 p.m., surveillance observed the child and VALERA exit from the south-side doors of Storage Facility A and saw that VALERA was carrying an almost all-black bag with a black handle. As VALERA approached the rear of the minivan, the tailgate opened, and law enforcement observed VALERA place the almost all-black bag with a handle inside the rear hatch of the minivan before re-entering the front passenger seat of the minivan. Surveillance then saw the child open the gate and the minivan pull out and then stop just outside of the gated area. The child reentered the minivan as well, and after a few minutes, the minivan departed from Storage Facility A.

14. Law enforcement maintained surveillance on the maroon minivan as it went through a fast-food restaurant's drive thru and then drove eastbound on 47th Street, southbound on Damen Avenue, and eastbound on 55th Street, to then head southbound on Interstate 90 / Interstate 94 and eastbound on Interstate 90. While

following eastbound on Interstate 90, law enforcement momentarily lost eyes on the minivan for approximately two minutes, in an area of the interstate with no on or off ramps, before locating the minivan still headed eastbound on Interstate 90. Surveillance observed as the minivan continued heading eastbound across the Illinois-Indiana border and into northwest Indiana. The DEA then contacted a Lake County Deputy Sheriff on patrol in the area to request that it conduct a traffic stop of the minivan should probable cause develop or exist to do so.

C. **Traffic Stop and Search of Minivan**

15. At approximately 3:40 p.m., on Interstate 90 in or around LaPorte, Indiana, the Lake County Deputy Sheriff observed the maroon minivan drifting across the lane lines, and stopped the minivan for unsafe lane movement. As the minivan pulled over, another law enforcement agent observed VALERA reaching back toward the floorboard area between the front and middle rows of seats.

16. According to the Deputy Sheriff, during the stop, when the Deputy Sheriff asked the female driver where she was headed, she did not provide a clear response. Also according to the Deputy Sheriff, VALERA said, in sum and substance, that he was going to meet a friend in South Bend, but VALERA seemed visibly nervous and was avoiding making eye contact with the Deputy Sheriff while drinking a lot of a beverage in a fast-food cup.

17. During the stop, the Deputy Sheriff walked his trained law enforcement narcotics canine partner around the minivan, and observed the canine alert to the

6

odor of drugs near the rear passenger side of the minivan, behind the empty third row of seats.

18. Law enforcement searched the minivan and found in the back of the van: (1) an almost all-black bag with a black handle and a zipper with red accents, appearing consistent in shape and appearance with the almost all-black bag that VALERA was observed carrying out of the storage locker at Storage Facility A; (2) a larger, longer black bag containing what appeared to be a foldable chair or tent; (3) an empty black duffel bag with red straps; (4) an empty black backpack; and (5) a gray and black bag containing a baseball helmet.

19. Inside the almost all-black bag with a black handle, law enforcement found approximately eight bricks of suspect narcotics wrapped in cellophane and tape, weighing approximately 10.05 kilograms. Law enforcement agents performed a field test of a small sample of the substance, and it indicated the presumptive presence of cocaine.

20. Law enforcement also found a small purse on the floorboard between the front and middle rows of seats in the minivan, in the area where a law enforcement agent had seen VALERA reaching near the start of the traffic stop. Inside the purse was a loaded Ruger pistol, bearing serial number 300-63813, and VALERA's Illinois driver's license.

D. **Consent Searches of Storage Unit at Storage Facility A and VALERA's Residence**

21. After being Mirandized, the female driver told law enforcement, in sum and substance and among other things, that VALERA is her husband and the child

in the minivan is their 7-year-old son, and that earlier that day, VALERA had asked her to go with him to talk to a friend. According to the female driver, while they were driving earlier that day, VALERA had said that he needed to pick something up from her storage unit first. Also according to the female driver, the storage unit at Storage Facility A is hers, but both she and VALERA have access to it and VALERA also occasionally uses it, and she does not know specifically what VALERA keeps there. The female driver said, in sum and substance, that she had not known about any drugs or a gun inside the car. The female driver also told law enforcement about where she, VALERA, and their son had driven earlier that day prior to being stopped, and the information she provided was consistent with what law enforcement had observed while on surveillance.

22. The female driver gave verbal and written consent for law enforcement to search her storage unit at Storage Facility A; provided law enforcement with the storage unit number, the key for the unit, and the passcode for the gate; and also consented to law enforcement cutting the storage unit's lock if needed.

23. Later on June 9, 2021, law enforcement conducted a consent search of the storage unit and found, among other things, another brick of suspect narcotics wrapped in cellophane and tape—packaged in the same manner as the eight bricks of suspect cocaine found in the maroon minivan. The brick of suspect narcotics was partially visible atop a large plastic storage container but was partially covered by a trash bag containing clothing. Law enforcement did not field-test a sample of the substance.

24. The female driver also gave verbal and written consent for law enforcement to search her and VALERA's residence in Chicago, Illinois, where she said they lived with their son and two disabled daughters (aged 23 and 24), and provided law enforcement with the key to the residence.

25. Also on June 9, 2021, law enforcement conducted a consent search of the VALERA residence, where they found, among other things, a money counter on a chair in the kitchen; bulk U.S. currency totaling approximately over $40,000 in a drawer in the kitchen and inside a bedroom closet; and—inside a black backpack in the front entryway closet—approximately four bricks of suspect narcotics wrapped in cellophane and tape, packaged in the same manner as the other bricks of suspect narcotics found in the minivan and storage unit. Law enforcement did not field-test a sample of the substance.

26. In one of the bedrooms, law enforcement also found a Sig Sauer P365 pistol, bearing serial number 66A810516, which, according to a search of a law enforcement database, was reported stolen in Chicago in or about July 2020.

27. According to a search of Illinois State Police records, neither VALERA nor his wife have a FOID card or Concealed Carry License.

## CONCLUSION

28. Based on the information in this affidavit, there is probable cause to believe that DEAN VALERA knowingly and intentionally possessed with intent to distribute a controlled substance, namely 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code Section 841(a).

FURTHER AFFIANT SAYETH NOT.

THOMAS J. ROBERTSON
Special Agent, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone or other reliable electronic means on June 10, 2021

Honorable GABRIEL A. FUENTES
United States Magistrate Judge